IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PCS Nitrogen, Inc., | ) | |
| | ) | |
| | ) | Civil Action No. 2:09-3171-MBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Ross Development Corporation; T. | ) | |
| Heyward Carter, Jr.; Grayson G. Hanahan; | ) | |
| William O. Hanahan, III; Katharyne H. | ) | |
| Rike; Estate of G.L. Buist Rivers, Jr.; and | ) | |
| Mikell R. Scarborough, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff PCS Nitrogen, Inc. ("PCS") filed the within action against Defendants[1] Ross

Development Corporation ("Ross"); and T. Heyward Carter, Jr. ("Carter"), Grayson G. Hanahan ("G.

Hanahan"), William O. Hanahan, III ("W. Hanahan"), Katharyne H. Rike ("Rike"), Mikell R.

Scarborough ("Scarborough"), and the Estate of G.L. Buist Rivers ("Rivers Estate") (collectively "the

Ross Directors") on December 8, 2009 (hereinafter "the federal court action"). PCS alleges causes of

action for: 1) fraudulent conveyance; 2) civil conspiracy; and 3) breach of fiduciary duty. This case

is before the court on Defendants' Motion to Dismiss, which was filed on February 22, 2010. PCS

responded to the motion to dismiss on March 11, 2010 and Defendants replied on March 22, 2010.

This case is also before the court on PCS's Motion to Amend the Complaint, which motion was filed

on April 14, 2010. On May 3, 2010, Defendants responded to the motion to amend. On May 14, 2010,

PCS replied.

---

[1] "Defendants" hereinafter refers to all of the defendants except the Estate of G.L. Buist Rivers.

<u>**FACTS**</u>

From 1905-1966, Ross, then doing business as Planters Fertilizer & Phosphate Company ("Planters"), owned and operated a phosphate fertilizer plant on a parcel of land in Charleston, South Carolina ("the Site"). Compl. ¶ 2. In 1966, Planters sold the plant and Site to Columbia Nitrogen Corporation ("CNC"), which was later ruled to be the predecessor of PCS. Compl. ¶ 3; *see Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Findings of Fact and Conclusions of Law 22, Entry 118. The Site was subsequently conveyed to some real estate developers in Charleston and then to Ashley II of Charleston, a redevelopment company. At some point after CNC's ownership period, the Environmental Protection Agency ("EPA") began investigating contamination at the Site. The EPA has determined that the Site is contaminated with lead and arsenic and must be remediated. The cost of this remediation is estimated to be several million dollars. Compl. ¶ 4.

PCS alleges in its complaint that Ross and the Ross Directors have known since approximately 1992 that Planters contributed to the contamination at the Site and that Ross was likely liable for remediation costs. Compl. ¶ 5. PCS alleges that despite this knowledge, the Ross Directors "fraudulently distributed all of Ross's assets to the shareholders of Ross, including themselves." Compl. ¶ 5. PCS contends that these distributions totaled more than $5.7 million. Compl. ¶ 5.

On September 26, 2005, Ashley, the current owner of the Site, brought a CERCLA action against PCS to recover from PCS the cost of remediating the Site (hereinafter "*Ashley* litigation"). *See Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782. On January 8, 2007, PCS was granted leave to add a CERCLA contribution claim against Ross in the *Ashley* litigation. *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Entry 88. On January 18, 2008, PCS added a contractual indemnification claim against Ross in the *Ashley* litigation. Compl. ¶¶ 7 and 8;

*Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Entry 137. On June 13, 2008, Judge Houck denied PCS leave to add claims against Ross's former shareholders ("the Ross Shareholders") in the *Ashley* litigation, holding that the court lacked supplemental jurisdiction over these claims and that joinder was inappropriate. *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Entry 194. On July 3, 2008, the court denied a motion to reconsider its June 13, 2008 order. The court found that the proposed claims against the Ross Shareholders lacked a common nucleus of operative fact with the CERCLA claims and injected too many new issues into the *Ashley* litigation. *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Entry 201 at 2-3.

On September 15, 2008, PCS filed an action in the Court of Common Pleas for the County of Charleston against the Ross Shareholders ("the state court action"). *See PCS Nitrogen, Inc. v. Buhrmaster et al.*, 2008-CP-10-5269. In the state court action, PCS seeks injunctive relief preventing the Ross Shareholders from further distributing or dispersing Ross's assets, an order finding the Ross Shareholders liable to PCS as a creditor of Ross, and fixing damages against each Ross Shareholder in the amount of assets distributed to him or her by Ross in the liquidation.

## DISCUSSION

### I.    Defendants' Motion to Dismiss

#### A.    Abstention

Defendants argue that the court should abstain from exercising jurisdiction in the federal court action in favor of the state court action. Generally speaking, the "dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs. Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005). "Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of

3

an action in the state system is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir. 1992)). Moreover, federal courts "are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Id.* (quoting *Colorado River Water Conservation Dist., v. United States*, 424 U.S. 800, 817 (1976)). When considerations of proper constitutional adjudication and respect for federal-state relations are not issues, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding are very limited. *Colorado River*, 424 U.S. at 817. However, a federal court may decline to exercise jurisdiction under the *Colorado River* abstention doctrine in "'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Chase Brexton*, 411 F.3d at 262 (quoting *Quackenbush v. Allstate Ins., Co.*, 517 U.S. 706, 716 (1996)).

In applying the *Colorado River* abstention doctrine, the threshold question is whether there are parallel suits. *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000). If this requirement is met, a district court then carefully balances seven factors to determine whether exceptional circumstances compel the court to decline to exercise jurisdiction. These factors are: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; (6) the adequacy of the state proceeding to protect the parties' rights; and (7) whether either the state or federal suit was a contrived, defensive reaction to the other. *Chase Brexton*, 411 F.3d at 463-64 (listing the first six factors); *McLaughlin*, 955 F.2d at 935 (identifying the seventh factor).

4

The Supreme Court has held that no factor is determinative and that courts should balance carefully the combination of factors as they apply in a case, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. "Only the clearest of justifications will warrant dismissal" under *Colorado River*. *Colorado River*, 424 U.S. at 818. Abstention is the exception, not the rule, and should "be considered only when the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28 (internal quotations omitted). The Supreme Court has emphasized that a district court should not seek to find a substantial reason for the exercise of federal jurisdiction, but instead should determine whether exceptional circumstances justify *giving up* jurisdiction. *Moses H. Cone*, 460 U.S. at 25-26.

      1.   <u>Parallel Proceedings</u>

Defendants contend that the federal court action is parallel to the pending state court action against the Ross Shareholders. Suits are parallel "if substantially the same parties litigate substantially the same issues in different forums." *Al-Abood*, 217 F.3d 225, 232-33 (4th Cir. 2000)(citing *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). The Fourth Circuit has "strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical." *Chase Brexton*, 411 F.3d at 464. For example, in *Al-Abood,* the Fourth Circuit held that two proceedings were not parallel despite the fact that the parties in the two suits were substantially the same, because the issues in the two suits were distinct. 217 F.3d at 232-33. The *Al-Abood* court held that while the two suits had certain facts and arguments in common, the legal issues were different where in one proceeding, the central issues concerned whether a trust was created and whether trust funds were confiscated; and in the other proceeding the

central issue concerned whether certain individuals were fiduciaries. *See also McLaughlin*, 955 F.2d at 935 (stating that although the two actions involved similar claims and there were facts in common, the actions were not parallel because neither the parties nor the legal theories were the same); *New Beckley Mining*, 946 F.2d at 1074 (holding that the state and federal actions, although "virtually identical," are not parallel because the remedies sought and the issues raised were not the same). *But see Telesco Fuel & Masons Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) (finding that two proceedings were parallel when both contained the same causes of action and the federal proceeding only raised one additional legal theory).

In the present case, while the underlying facts and the remedies sought are substantially the same in both cases, the parties and causes of action in each case are distinct. The parties are different in the two cases because in the state court action, PCS seeks recovery not just from the Ross Directors, as in the federal action, but also the Ross Shareholders. The causes of action are distinct in the two cases because, in the state court action, PCS is suing the Ross Shareholders under S.C. Code § 33-14-107, which allows claims to be enforced against shareholders of dissolved corporations if distributions were made to the shareholders; while in the federal court action, PCS seeks to hold the Ross Directors liable for fraudulent distributions under S.C. Code § 33-8-330 and under the common law theories of breach of fiduciary duty and civil conspiracy. The court finds that the federal court action and the state court action are not parallel.

2.      Exceptional Circumstances

While the court finds that this case is not parallel to the pending state court proceeding, it will nonetheless proceed with an exceptional circumstances analysis to demonstrate that even if the suits were parallel, exceptional circumstances would not compel the court to decline jurisdiction. The first

6

two factors of the exceptional circumstances analysis are inapplicable here because both actions are in personam and have been filed in South Carolina. Therefore, the court will only address the five remaining factors.

a.    *Avoiding Piecemeal Litigation*

Defendants argue that there is a possibility of inconsistent determinations if the federal court action is permitted to proceed. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co., Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002). However, "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Chase Brexton*, 411 F.3d at 465-66; *see also Gannett Co.*, 286 F.3d at 744 ("The threat of inconsistent results and the judicial inefficiency inherent in parallel breach of contract litigation, however, are not enough to warrant abstention."); *Gordon v. Luksch*, 887 F.2d 496, 497-98 (4th Cir. 1989) ("Only in the most extraordinary circumstances . . . may federal courts abstain from exercising jurisdiction in order to avoid piecemeal litigation. It follows that because of the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, pendency of an action in state court by itself does not bar proceedings in federal court."). "Instead, for abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill[-]suited for resolution in duplicate forums." *Gannett Co.*, 286 F.3d at 744 (citing *Moses H. Cone*, 460 U.S. at 16 (noting that "[b]y far the most important factor in our decision to approve the dismissal [in *Colorado River*] was the clear federal policy . . . [of] avoidance of piecemeal adjudication of water rights in a river system, as evinced [by statute].")).

The court finds that the avoidance of piecemeal litigation does not favor abstention. While some duplication of effort is likely to occur if both the state and federal court actions proceed, Defendants fail to provide any reason why permitting both the state and federal proceedings to go forward would result in "inefficiencies and inconsistent results beyond those inherent in parallel litigation." Allowing both of these cases to proceed would likely result only in the normal issue and claim preclusion that occurs when one court decides an issue or claim before another court. Such normal preclusion does not favor abstention.

b.    *Order in which Courts Obtained Jurisdiction and the Progress in Each Proceeding*

Defendants contend that the filing of the state court action fifteen months before the federal court action favors abstention. The Supreme Court has indicated, however, that "[p]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Because the state court action was stayed within six months after it was filed pending the disposition of the *Ashley* litigation, the state court action has not substantially progressed. This factor does not favor abstention.

c.    *Whether State or Federal Law Provides the Rule of Decision*

Defendants contend that this federal court action is predicated on state law and that several novel questions of state law are at issue, including: (1) whether an entity such as PCS, of which Ross was unaware at the time of the distributions, may set aside a conveyance as fraudulent without naming the transferees of the distributions as parties; and (2) whether S.C. Code § 33-14-107(d) permits an entity to bring a breach of fiduciary duty action directly against the former directors of a dissolved corporation.

"The Supreme Court has made clear that the presence of state law and the adequacy of state proceedings can be used only in rare circumstances to justify *Colorado River* abstention." *Gannett*

*Co.*, 286 F.3d at 746 (citing *Moses H. Cone*, 460 U.S. at 26). This is because federal courts often apply state law in diversity cases. *Id.* at 747. Therefore, abstention based on this factor may be appropriate only when the retention of federal jurisdiction would create "needless friction" with "important state policies." *Id.* at 746.

The state law issues presented by the federal court action are not so novel such that the court cannot resolve them based upon South Carolina precedents. Moreover, the state law issues in the federal action are not fundamental issues of state policy such that the state courts need to rule on them in order to set forth state policy. This is particularly true because the South Carolina Corporate Code is derived from the 1984 Model Business Corporation Act ("Model Act"). *See* S.C. Code § 33-1-101, Official Comment and Reporter's Comments. This indicates that case law from other states applying the Model Act will be persuasive in interpreting the South Carolina Corporate Code. This factor does not favor abstention.

### d. *Adequacy of the State Proceeding to Protect the Parties' Rights*

The parties do not appear to dispute that PCS could have brought all of the within claims in the state court action without being prejudiced. This factor weighs in favor of abstention.

### e. *Whether Either the State or Federal Court Action was a Contrived, Defensive Reaction to the Other*

Defendants argue that PCS's motive in filing the federal court action is to financially stretch the Ross Shareholders by forcing them to litigate the same transactions in two forums. "[T]he vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River." *Telesco Fuel & Masons Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (citing *Moses H. Cone*, 460 U.S. at 17 n.20). In *Telesco*, the Second Circuit found that this factor weighed in favor of abstention when the plaintiff,

9

after he had some setbacks in state court, brought a federal action alleging the same causes of action as he had asserted in state court. *Id.* at 363. This case is distinguishable from *Telesco* because the state and federal cases are distinct; PCS does not allege the same causes of action in the federal court action as it does in the state court action. Moreover, while PCS's motive for filing the federal court action as opposed to bringing the within claims in state court may be strategic, it may also be due to the relationship between the within case and the *Ashley* litigation. This factor does not weigh in favor of abstention.

f. *Conclusion*

The court finds that these factors do not provide the clear justification necessary to counterbalance the heavy weight in favor of the exercise of jurisdiction. The court declines to abstain from exercising jurisdiction in this case.

## B. Ripeness

Defendants argue that this case should be dismissed because PCS has not yet been found liable for contamination at the Site, and Ross has not yet been found liable to PCS, indicating that this case is not yet ripe for adjudication. A court cannot decide a claim that is not ripe for adjudication. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983). In determining whether a case is ripe for review, courts consider: (1) the fitness of the issues of judicial decision, and (2) the hardship to the parties of withholding court consideration. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007). "An issue is not fit for review if it rests upon contingent future events that may

not occur as anticipated, or [] may not occur at all." *Id.* Because judgment has been entered in the *Ashley* litigation finding PCS jointly and severally liable for contamination at the Site, and Ross liable to PCS for contribution, *see Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782, Entry 118, this issue is now moot.

**C.      Fraudulent Conveyance Claim**

1.      <u>Whether Dismissal for Failure to Join Indispensable Parties is Appropriate</u>

Defendants argue that PCS's fraudulent conveyance claim should be dismissed for failure to join all of the transferees of the Ross distributions, a/k/a the Ross Shareholders, as indispensable parties. Generally speaking, whether a party is indispensable is a fact-specific inquiry that is left to the discretion of the district court. *See Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). Federal Rule of Civil Procedure 19 provides:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. (2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

In *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992 (S.D.N.Y. 1991), the Southern District of New York addressed a situation factually similar to the one before the court with regard to a fraudulent conveyance claim. In that case, the defendants contended that three companies were necessary parties and had to be joined under Rule 19 because (1) the three companies were transferees of the allegedly fraudulent conveyance which the suit sought to set aside; (2) the three companies had

an interest in defending their rights as challenged in the complaint because a determination that conveyances at issue were fraudulent could be asserted for its precedential effect in a subsequent litigation against them; and (3) failure to join the three companies would invite further litigation over the same subject matter. *Id.* at 1002. The *Crowthers* court ruled, however, that these parties were not necessary to the fraudulent conveyance action because:

> [s]hould the defendants be found liable under any of the theories advanced in the complaint, the absence of the three would not prevent complete relief from being accorded those already parties. Each transferee's liability under the fraudulent conveyance claims is limited to the amount it wrongfully received. With regard to the other claims, joint tortfeasors are not necessary parties since their liability is both joint and several. A tortfeasor, if found liable, can seek contribution from a joint tortfeasor. Accordingly, no rights of current defendants are prejudiced by failure to join [the three companies].

*Id.* at 1003. S.C. Code Ann. § 33-8-330 provides:

> (a) A director who votes for or assents to a distribution made in violation of Section 33-6-400 or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating Section 33-6-400 or the articles of incorporation if it is established that he did not perform his duties in compliance with Section 33-8-300. In any proceeding commenced under this section, a director has all of the defenses ordinarily available to a director.

> (b) A director held liable under subsection (a) for an unlawful distribution is entitled to contribution:

>> (1) from every other director who could be held liable under subsection (a) for the unlawful distribution; and

>> (2) from each shareholder for the amount the shareholder accepted knowing the distribution was made in violation of Section 33-6-400 or the articles of incorporation.

Section 33-8-330 indicates that liability is joint and several and that the Ross Directors can later sue the Ross Shareholders for contribution. Moreover South Carolina case law indicates that:

> [a]n injured person may select whom he wishes to sue from among those whose

12

negligent acts or omissions have united to produce his injury, or he may sue all who are jointly liable to him and collect the full amount of any judgment obtained from one or more of them.

*M&T Chem., Inc. v. Barker Indus., Inc.*, 370 S.E.2d 886, 887 (S.C. Ct. App. 1988) (citing *Travelers Ins. Co. v. Allstate Ins. Co.*, 155 S.E.2d 591 (1967)). Based upon the foregoing, the rights of Defendants are not prejudiced by PCS's choice not to join the Ross Shareholders in this action. Defendants' motion to dismiss the fraudulent conveyance claim under Rule 19 is denied.

2.       Whether PCS Has Failed to State a Claim for Fraudulent Conveyance

Defendants argue that PCS has not plausibly stated a fraudulent conveyance claim in its complaint. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557).

South Carolina Code Section 27-23-10, the Statute of Elizabeth, states:

Every gift [or] grant . . . by writing or otherwise . . . for any intent or purpose to delay, hinder, or defraud *creditors and others* of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken . . . to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

(emphasis added).

South Carolina courts have found that section 27-23-10 extends its protections not just to judgment creditors, but to other types of parties defrauded in connection with conveyances. *Lebovitz*

*v. Mudd*, 358 S.E.2d 698, 700 (S.C. 1987). "In South Carolina, fraudulent transfers may be set aside by existing as well as subsequent creditors." *In re J.R. Deans Co., Inc.*, 249 B.R. 121, 130 (D.S.C. 2000) (citing *Mathis v. Burton*, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995)). "[S]ubsequent creditors may have conveyances set aside when (1) the conveyance was 'voluntary,' that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors." *Id.* at 130-31 (citing *Mathis*, 460 S.E.2d at 408). "Subsequent creditors must show actual moral fraud, rather than legal fraud." *Mathis*, 460 S.E.2d at 408-09 (internal quotations omitted); *see also In re Ducate*, 369 B.R. 251, 259 (D.S.C. 2007) ("when a subsequent creditor with notice attacks the voluntary [distribution] of his debtor, there is no irrebuttable presumption of fraud arising from the fact that the transfer is without consideration, and the fact of indebtedness at the time; but all the circumstances must be weighed by the Court or jury trying the issue, for the purpose of ascertaining whether fraud, actual and positive, as distinguished from what is called 'legal fraud,' really existed at the time."). Of note is *Brown v. Butler*, 554 S.E.2d 431 (S.C. Ct. App. 2001), in which the South Carolina Court of Appeals held that an estranged wife had sufficient interest in her husband's property to set aside a conveyance that could "adversely affect her claims for separate support and maintenance, for alimony, or for an equitable division of the marital property" even when the wife was not yet a creditor to the husband. *Id.* at 433.

While Defendants argue that the Ross Directors could not intend to defraud an entity that they did not know existed, they have not cited any case law that supports this position. So long as it is alleged that the Ross Directors intended to defraud future creditors related to the environmental claims, a fraudulent conveyance claim can be made. PCS alleges that the Ross Directors, knowing of the possible environmental claim, distributed all of Ross's assets, leaving Ross with insufficient funds to

pay any claim brought by PCS or another creditor. *See* Compl. ¶¶ 27-33. PCS further alleges that these distributions were made with actual intent to defraud Ross's existing and subsequent creditors. Compl. ¶ 34. PCS has pleaded a valid fraudulent conveyance claim.

3. Whether PCS's Fraudulent Conveyance Claim Should be Dismissed Because the Statute of Elizabeth Does Not Provide for the Recovery of a Money Judgment Against the Directors of the Transferor

Defendants argue that the only remedy under the Statute of Elizabeth is equitable relief in the form of a constructive trust against the transferees, and that no fraudulent conveyance case has ever imposed a constructive trust on the directors of a transferor. The relief that the Statute of Elizabeth provides for is the setting aside of a fraudulent transfer, which is an equitable remedy. *See* S.C. Code Ann. § 27-23-10. PCS seeks "an order from the Court setting aside the fraudulent transfer of assets." Compl. ¶ 35. Because each of the Ross Directors was also a transferee, PCS can obtain relief from the Ross Directors in the form of a constructive trust in the amount fraudulently conveyed. Based upon the foregoing, Defendants' motion to dismiss PCS's fraudulent conveyance claim under Federal Rule of Civil Procedure 12(b)(6) is denied.

**D.    Breach of Fiduciary Duty**

Defendants argue that PCS's breach of fiduciary duty claim should be dismissed because South Carolina law prohibits a creditor from bringing an action directly against the directors of a corporation. South Carolina Code Section 33-8-330(a) states:

> A director who votes for or assents to a distribution made in violation of Section 33-6-400 or the articles of incorporation is *personally liable to the corporation* for the amount of the distribution that exceeds what could have been distributed without violating Section 33-6-400 or the articles of incorporation if it is established that he did not perform his duties in compliance with Section 33-8-300.

(emphasis added). Under South Carolina law:

15

> if the mismanagement of the directors has caused a loss *to the corporation* . . . the liability of the directors on account thereof is an asset of the corporation, remediable only by an action in the name or in the right of the corporation; if the mismanagement of the directors has caused *a particular loss to an individual general creditor, depositor, or stockholder*, the liability is an asset of such injured individual, remediable by an action in his name.

*Stewart v. Ficken*, 149 S.E. 164, 165 (S.C. 1929) (emphasis added). Thus, the court must determine whether the Ross Directors' mismanagement affected PCS directly, or whether PCS's interests were submerged in the corporation whose assets were thus dissipated. *See id.* When a corporation becomes insolvent, the fiduciary duty of the directors shifts to the creditors of the corporation. *Cumberland Woods Products, Inc. v. Bennett*, 417 S.E.2d 617, 619 (S.C. Ct. App. 1992); *see also Hutchinson v. Rock Hill Real Estate & Loan Co.*, 43 S.E. 295, 302 (S.C. 1902).

PCS has not properly stated a claim for breach of fiduciary duty against the Ross Directors. This is because PCS did not allege that Ross was insolvent at the time it made the distributions at issue such that the Ross Directors would have owed PCS a fiduciary duty when the distributions were made. However, PCS has moved to amend its complaint to state a proper claim for breach of fiduciary duty. The court's ruling on the motion to amend is set forth below.

### E.    Civil Conspiracy

#### 1.    Whether PCS Failed to State a Claim for Civil Conspiracy

Defendants contend that PCS has failed to state a claim for civil conspiracy because: (1) PCS alleges a conspiracy between Ross and its directors, which is not legally possible; (2) PCS has not plausibly alleged intent to injure PCS by the purported participants in the conspiracy; and (3) PCS has failed to plead special damages. The court will address each argument in turn.

##### a.    *Whether a Corporation May Conspire with its Officers or Directors*

Defendants contend that PCS has not properly pleaded a civil conspiracy claim because the

facts alleged constitute a decision by Ross made by and through the Ross Directors, and a corporation cannot conspire with its directors. Generally speaking, a civil conspiracy cannot exist when the conspiratorial acts are those of employees or directors, acting in their official capacity, allegedly conspiring with the corporation. *McMillan v. Oconee Mem. Hosp., Inc.*, 626 S.E. 2d 884, 886 (S.C. 2006). This is because "the acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). This "intracorporate immunity doctrine," however, is inapplicable "where a corporate 'officer has an independent personal stake in achieving the corporation's illegal objectives.'" *Id.* In *ePlus*, the Fourth Circuit found that the personal stake exception applied when a corporate agent siphoned money out of the corporation and personally profited at the corporation's expense. *Id.*

The facts, as alleged by PCS, indicate that the Ross Directors sought to personally profit by distributing Ross's funds and dissolving the corporation before any potential environmental liability came to fruition. *See* Compl. ¶¶ 37-38. The court finds that PCS has suitably alleged an exception to the intracorporate immunity doctrine.

b. *Whether Plaintiff Failed to Plausibly Allege Intent to Injure Plaintiff*

Defendants contend PCS's allegation that: "[t]he purpose of [the distributions to the Ross Shareholders] was to deprive PCS and other creditors of the means of collecting a judgment against Ross," (Compl. ¶ 38), is devoid of factual substance and that PCS is not entitled to an assumption of truth on this allegation. Defendants further contend that it is impossible for the primary purpose of the Ross distributions to have been to cause special harm to PCS since Defendants did not know of PCS's existence until after all distributions were made.

In *Future Group II v. Nationsbank,* 478 S.E.2d 45 (S.C. 1996), the Supreme Court of South Carolina held that "[a] conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action." *Id.* at 51. That case involved two debts: (1) an $80,000 debt owed by an insurance agency to a business partnership; and (2) an $800,000 debt owed by one of the agency's directors to a bank. *Id.* at 47. The plaintiff alleged that the bank conspired to injure the partnership by obtaining the agency's corporate guarantee of the director's debt to the bank. *Id.* at 50. Since the bank had no idea of the partnership's existence or of the debtor-creditor relationship between it and the agency, the Supreme Court of South Carolina found that the bank could not be found to have entered into a conspiracy with the intent of injuring the partnership. *Id.* at 51.

In *LaBelle v. Brown & Williamson Tobacco Corp.*, No. 2:98-3235-23, 1999 WL 33591435 (D.S.C. 1999), however, the district court noted that the harm resulting from the defendants' actions was "much less incidental or unforeseeable" than the actions of defendants in *Future Group II. Id.* at *12. The *LaBelle* court found that when the only part of the alleged harm that was unforeseeable was the identity of the people or entities that would be harmed, a claim for civil conspiracy was still possible and that the plaintiff had met the pleading requirement. *Id.* at 12-13.

While the *LaBelle* court's ruling has no precedential value, the court finds its reasoning persuasive. PCS has alleged that the Ross Directors distributed funds to shareholders, including themselves, for the purpose of forcing other potentially responsible parties to pay for the remediation of the Site. The court finds that PCS has suitably alleged an improper intent.

c.    *Whether PCS Properly Alleged Special Damages*

Defendants contend that the damages alleged in PCS's civil conspiracy claim are identical to

18

those alleged in its other causes of action. "Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989). Special damages are "[d]amages for losses that are the natural and proximate, but not the necessary, result of the injury [and] may be recovered only when such special damages are sufficiently stated and claimed." *Sheek v. Lee*, 345 S.E.2d 496, 497 (S.C. 1986) (emphasis in original). "Special damages must be alleged in the complaint to avoid surprise to the other party." *Id.* In *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607 (S.C. 1981), the Supreme Court of South Carolina held that because a civil conspiracy claim did no more than incorporate prior allegations and then allege the existence of a civil conspiracy and damages, there was no viable civil conspiracy claim. *Id.* at 611. Similarly, in *Vaught*, the South Carolina Court of Appeals concluded that a civil conspiracy claim inadequately pleaded special damages in that "[t]he damages sought in the conspiracy cause of action are the same as those sought in the breach of contract cause of action." 387 S.E.2d at 94.

In *Little v. Brown & Williamson Tobacco Corp.*, No. C.A. 2:98-1879-23, 1999 WL 33291385, at *14 (D.S.C. 1999), the district court provided an apt description of the special damages requirement:

> The third element of a conspiracy claim requires plaintiff to plead and prove special damages. Essentially, this means that the complaint must describe damages that occurred as a result of the conspiracy itself, in addition to any damages alleged as a result of any other claims. That is, the damages allegedly resulting from the conspiracy must not overlap with or be subsumed by the damages resulting from the other claims.

In ¶ 39 of the complaint, PCS alleges the following damages for its civil conspiracy claim: "[a]s a result of this conspiracy, PCS has suffered special damages including attorney fees and other costs incurred in connection with PCS's claim against the former Ross Shareholders (Case No. 2008-CP-10-5269) and monetary damages equal to the difference between Ross's liability to PCS under the

contribution claim in Case No. 2:05-2782 and Ross's current assets." With regard to its breach of fiduciary duty claim, PCS alleges that it "has suffered and continues to suffer damages including the cost of pursuing third party actions against the Ross shareholders, the cost of this claim, and the difference between Ross's liability to PCS under the contribution claim in Case No. 2:05-2782 and Ross's current assets." Compl. ¶ 44. Because paragraphs 39 and 44 of the complaint allege essentially the same damages, PCS has failed to allege special damages and a proper claim for civil conspiracy has not been pleaded. However, PCS has moved to amend the complaint to properly alleged special damages. The court's ruling on PCS's motion to amend its complaint to properly allege a claim for civil conspiracy is set forth below.

## II.    PCS's Motion to Amend

PCS seeks leave to amend its complaint to (1) add the remaining Ross Shareholders as defendants to its fraudulent conveyance claim; (2) incorporate additional facts to clarify its claims; and (3) add a breach of fiduciary duty claim on behalf of Ross; and (4) add an equitable indemnification claim.

### A.    Whether PCS May Amend its Complaint as a Matter of Course

PCS argues that its amended complaint was filed as a matter of course because it was filed within twenty-one days of service of Defendants' complete Rule 12(b) motion to dismiss, if "motion" is understood to include arguments set forth in Defendants' reply. The court disagrees. Rule 15(a)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2009, provides:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

This language makes clear that a complaint may only be amended as a matter of course within twenty-

one days of the filing of a motion to dismiss, not a reply to a motion to dismiss. Because Defendants' motion to dismiss was filed on February 22, 2010 and PCS's Motion to Amend was filed on April 14, 2010, more than twenty-one days later, PCS may not amend its complaint against Defendants as a matter of course.

## B.    Whether PCS May Amend its Complaint under Rule 15(a)(2)

PCS seeks, in the alternative, to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). When a party is not amending its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Foster v. Wintergreen Real Estate, Co.*, No. 08-2356, 2010 WL 325959, at *6 (4th Cir. 2010). This rule favors resolving cases on their merits. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

Mere delay, by itself, is not sufficiently prejudicial to warrant denial of a motion to amend. *Id.* In addition, the Fourth Circuit has found that an amendment is not prejudicial if it merely adds an additional theory of recovery to the facts already pleaded and is offered before discovery begins. *Id.* at 427. Further, "[l]eave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient . . . on its face." *Foster*, 2010 WL 325959 at *6 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). According to the Supreme Court, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason–such as . . . futility of amendment . . . the leave sought should, as the rules require,

be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Defendants contend that PCS's proposed amended complaint is improper for several reasons.

### 1.    Defendants' Procedural Arguments Against Amendment

First, Defendants argue that PCS's proposal to add the Ross Shareholders to this action supports Defendants' arguments for abstention and is therefore futile.  This argument is without merit because PCS's joinder of the Ross Shareholders does not change the court's determination that the state court action and federal court action are not parallel, precluding abstention.  Second, Defendants contend that PCS's amendment is futile because the case is not ripe.  However, as found above, the ripeness issue is moot because the court entered a ruling in the *Ashley* litigation.  Third, Defendants contend that PCS's proposed amendment would be prejudicial because it falls outside of new Rule 15's twenty-one day period for amendment as a matter of right.  However, amendments outside of the time period for amendments as a matter of course are to be "freely given when justice so requires[,]" demonstrating a preference for adjudication on the merits.  *See* Fed. R. Civ. P. 15(a)(2).

### 2.    Fraudulent Conveyance Claim

Defendants contend that PCS's proposed amended fraudulent conveyance claim still fails to plausibly allege an intent to defraud PCS on the part of the Ross Directors.  The court disagrees.  As stated hereinabove, PCS need not allege that the Ross Directors intended to defraud a particular party so long as the intent to defraud existed.  *See LaBelle*, 1999 WL 33591435, at *12-13.

### 3.    Civil Conspiracy Claim

Defendants contend that PCS's proposed amendment fails to state a claim for civil conspiracy. The court found above that PCS's original complaint stated a valid claim for civil conspiracy except with regard to special damages.  In *Pratt & Whitney*, No. 04-1277, 2005 WL 670623 (4th Cir. Mar.

23, 2005), the Fourth Circuit found that a district court erred in not permitting a plaintiff to amend the complaint under Rule 15(a) to properly plead special damages. *Id.* at *7.

The purpose of PCS's proposed amended complaint is to properly allege special damages. Paragraph 76 of the proposed amended complaint states:

> [a]s a result of this conspiracy, PCS has suffered special damages. PCS has incurred attorney's fees and other costs in connection with (i) PCS's discovery of the [Ross] Director's fraud, (ii) PCS's answer filed in the Ross suit against its insurers, without knowledge that the Ross Directors' [sic] knew since as early as 1992 that the Site was contaminated and Ross was liable for this contamination, and (iii) PCS's development and filing of claims against the Ross Shareholders without knowledge of the available claims against the Ross Directors and Ross.

If proven, these damages would be proximately caused by the Ross Directors' alleged conspiracy and do not necessarily result from the fraudulent conveyance and breach of fiduciary claims. Moreover, the damages alleged in PCS's proposed equitable indemnification claim do not overlap with the above proposed special damages.[2] Therefore, the court grants PCS's motion to amend its complaint to properly allege special damages.

### 4. Derivative Action

Defendants contend that, as a matter of law, PCS cannot maintain a derivative action in Ross's name and therefore should not be permitted to amend its complaint to add a claim for breach of fiduciary duty on behalf of Ross. South Carolina Code Section 33-7-400 provides that "[d]erivative suits may be maintained on behalf of South Carolina corporations in federal and state court in accordance with the applicable rules of civil procedure." South Carolina Rule of Civil Procedure 23

---

[2]    In its equitable indemnification claim, PCS states: "Because the conduct of the Ross Directors caused Ross to sue PCS in its insurance coverage litigation, the Ross Directors should be required to equitably indemnify PCS for the cost of participation in that litigation. PCS seeks to recover the cost of answering the complaint in that action under its civil conspiracy claim. PCS seeks to recover all of its other costs and expenses in that action under this equitable indemnification claim." Proposed Amended Compl. ¶ 83.

states:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Rule 23 indicates that only stockholders may bring derivative claims on behalf of corporations.

PCS has not cited any authority in support of its ability to bring a derivative claim on behalf of Ross.

South Carolina case law indicates that a creditor may not bring a derivative action on behalf of a

corporation. For example, in *Johnson v. Baldwin*, 69 S.E.2d 585 (S.C. 1952), the Supreme Court of

South Carolina stated: "[t]he right of a stockholder to maintain a derivative action against the directors

of a corporation inheres in and attaches to his ownership of its stock and does not exist apart from such

ownership. It is a right which depends on status." *Id.* at 589. In addition, in *Davis v. Hamm*, 387

S.E.2d 676 (S.C. Ct. App. 1989) the South Carolina Court of Appeals held that: the South Carolina

Business Corporation Acts of 1962 and 1981 did not the abrogate legal principles that: (1) assets of

a corporation belong to the corporation and not to stockholders individually, and (2) that liability of

corporate officers for misappropriation of corporate property is an asset of corporation and, as such,

ordinarily can be basis of suit only by the corporation or a shareholder bringing a derivative action.

*Id.* at 678. The court finds that the amendment of PCS's complaint to add a derivative claim for breach

of fiduciary duty on behalf of Ross would be futile. The court denies PCS's motion to amend its complaint to the extent that it seeks to add a derivative claim for breach of fiduciary duty on behalf of Ross.

     5.      <u>Breach of Fiduciary Duty Claim</u>

Defendants argue that PCS's proposed amended complaint fails to state a direct claim for breach of fiduciary duty. As was discussed above, the court must determine whether the Ross Directors' alleged breach of fiduciary duty affected PCS directly, or whether PCS's interests were submerged in Ross, whose assets were dissipated. *See Stewart*, 149 S.E. at 165. When a corporation becomes insolvent, the fiduciary duty of the directors shifts to the creditors of the corporation. *Cumberland Woods Products*, 417 S.E.2d at 619; *see also Hutchinson*, 43 S.E. at 302.

PCS's proposed amended complaint states:

87.    In the 1990s, Ross became insolvent or reached a failing condition as its liability for the Site became greater than its assets.

88.    At that point, the Ross Directors owed fiduciary duties to the Ross creditors including CNC and PCS.

89.    Instead of fulfilling their fiduciary duties, the Ross Directors continued to distribute the proceeds of land sales to the Ross shareholders. The Directors preferred themselves, the other shareholders, and certain creditors over other creditors, including CNC and PCS. They failed to set aside any funds for future liabilities. Through this course of conduct, the Directors violated the fiduciary duties they owed to creditors.

90.    As a result, PCS has suffered and continues to suffer damages. These damages include the costs and expenses incurred by PCS in opposing Ross' inability to pay defense in the Ashley litigation. PCS also has incurred costs and expenses in developing claims directed at restoring funds fraudulently conveyed by the Directors. Damages also include the difference between any judgment entered against Ross in favor of PCS in the Ashley litigation and Ross assets available to satisfy that judgment.

91.    The Ross Directors should be held jointly and severally liable for these

damages because they acted in concert in breaching their fiduciary duties.

92.     Punitive damages should be assessed against the Ross Directors because they breached their duties willfully, wantonly, or in reckless disregard of the rights of the corporation, its shareholders, and its creditors.

Thus, PCS alleges that the Ross Directors' fiduciary obligations shifted to Ross's creditors when Ross became insolvent in the 1990s. This states "a claim to relief that is plausible on its face" as required by *Iqbal* and *Twombly*. The court grants PCS's motion to amend its breach of fiduciary duty claim.

### 6.     Attorney's Fees and Costs

Defendants argue that, to the extent PCS seeks to recover attorney's fees and costs associated with other pending lawsuits in its breach of fiduciary duty and equitable indemnification claim, such a remedy is impermissible as a matter of law. Generally speaking, attorney's fees cannot be recovered unless authorized by contract or statute. *Baron Data Sys., Inc. v. Loter*, 377 S.E.2d 296, 297 (S.C. 1989) (citing *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443 (S.C. 1978)); *see also Seabrook Island Property Owners' Ass'n v. Berger*, 616 S.E.2d 431, 434 (S.C. Ct. App. 2005). However, the Supreme Court of South Carolina has noted:

> It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages. In order to recover attorneys' fees under this principle, the plaintiff must show: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant or because of defendant's tortious conduct; (2) that the dispute was with a third party-not with the defendant; and (3) that the plaintiff incurred attorneys' fees connected with that dispute. If the attorneys' fees were incurred as a result of a breach of contract between plaintiff and defendant, the defendant will be deemed to have contemplated that his breach might cause plaintiff to seek legal services in his dispute with the third party.

> "In actions of indemnity, brought where the duty to indemnify is either implied by law or arises under a contract, reasonable attorney fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses."

*Addy v. Bolton*, 183 S.E.2d 708, 709-10 (S.C. 1971) (citing 22 Am. Jur. (2d), Damages, Section 166, Pages 235-236). The *Addy* court held that "in actions of indemnity, brought where the duty to indemnify is either implied by law or arises under contract, and no personal fault of the indemnitee has joined in causing the injury, reasonable attorneys' fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses." *Id.*

This case law indicates that PCS may collect attorney's fees as damages to the extent that it proves its allegations that the Ross Directors' tortious conduct caused PCS to become involved in legal disputes with third parties, including the Ross Shareholders and Ross's insurers, and PCS incurred attorney's fees connected with these disputes. The court grants PCS's motion to amend its complaint to seek attorney's fees and costs associated with other pending lawsuits in its breach of fiduciary duty and equitable indemnification claims.

    **C.**    **PCS Amends as a Matter of Course Against Estate of G.L. Buist Rivers Jr.**

PCS contends that it can amend as a matter of course against the Estate of G.L. Buist Rivers, Jr. because that Defendant has not answered or moved to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Based upon the text of Rule 15 as quoted above, this amendment is proper.

<u>CONCLUSION</u>

Defendants' motion to dismiss (Entry 13) is **granted in part and denied in part.** The court will not abstain from exercising jurisdiction in this case in favor of pending state court litigation. Furthermore, PCS has stated a proper claim for fraudulent conveyance. PCS's motion to amend (Entry 18) is **also granted in part and denied in part**. PCS has not stated a proper claim for breach of fiduciary duty or civil conspiracy, but is granted leave to amend its complaint as to these claims. PCS is not granted leave to amend its complaint to add a derivative action for breach of fiduciary duty on

behalf of Ross because it has no standing to make such a claim.  PCS is granted leave to amend its complaint to join the Ross Shareholders and to add an equitable indemnification claim.

**IT IS SO ORDERED**

s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina
September 30, 2010