IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PCS Nitrogen, Inc., ) | |
| ) | |
| ) | Civil Action No. 2:09-3171-MBS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Ross Development Corporation; T. ) | |
| Heyward Carter, Jr.; Grayson G. Hanahan; ) | |
| William O. Hanahan, III; Katharyne H. ) | |
| Rike; Mikell R. Scarborough; C. Cotes ) | |
| Worth Pinckney and T. Heyward Carter, As ) | |
| Co-trustees of the Trust of William O. ) | |
| Hanahan, Jr.; Ann Hanahan Blessing; ) | |
| Donald Buhrmaster, III; Eleanor W. Carter; ) | |
| Margaret H. Carter; Elizabeth H. Clark; ) | |
| Maria Grayson-Metaxas; Buist L. Hanahan; ) | |
| Elizabeth A. Hanahan; Frances G. Hanahan; ) | |
| Mary Ross Hanahan; Muriel R. Hanahan; ) | |
| Roger Parke Hanahan, Jr.;Grayson C. ) | |
| Jackson; Oriana H. Kirby; and Jeanne ) | |
| Deforest Smith Hanahan, ) | |
| ) | |
| Defendants. ) | |
| ) | |

PCS Nitrogen, Inc. filed the within action on December 8, 2009. On October 21, 2010, with leave of the court, PCS filed an amended complaint against Defendants Ross Development Corporation ("Ross"); T. Heyward Carter, Jr., Grayson G. Hanahan, William O. Hanahan, III ("Hanahan, III"), Katharyne H. Rike, and Mikell R. Scarborough ("Scarborough") (collectively "Ross Directors"); C. Cotesworth Pinckney and T. Heyward Carter, as co-trustees of the Trust of William O. Hanahan, Jr., Ann Hanahan Blessing, Donald Buhrmaster, III, Eleanor W. Carter, Margaret H. Carter, Elizabeth H. Clark, Maria Grayson-Metaxas, Buist L. Hanahan, Elizabeth A. Hanahan,

Frances G. Hanahan, Mary Ross Hanahan, Muriel R. Hanahan, Roger Parke Hanahan, Jr., Grayson C. Jackson, Oriana H. Kirby, and Jeanne DeForest Smith Hanahan (collectively "Ross Shareholders"). PCS alleges causes of action for: 1) fraudulent conveyance; 2) civil conspiracy; and 3) breach of fiduciary duty.[1]

On August 12, 2011, the court held a hearing during which it heard argument on several discovery motions. The court ruled from the bench on many of the discovery motions, but took the arguments on some of the motions under advisement. This case is before the court for a ruling on: 1) Ross and Scarborough 's Motion for Protective Order (Entry 69); 2) PCS's Motion to Compel the Production of Documents from Ross (Entry 95); and 3) Ross and Hanahan, III's Motion for Protective Order (Entry 97).

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT

PCS alleges that the Ross Directors dissipated Ross's assets despite knowledge of the potential environmental liability related to the site at issue in *Ashley II of Charleston v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782 (D.S.C.) (Case hereinafter referred to as "*Ashley II*," and the site at issue as the "Site"). Am. Compl. ¶¶ 1-3, 56. PCS specifically alleges that the Ross Directors continued to make distributions to the shareholders, including themselves, even after learning of the *Ashley II* CERCLA litigation and PCS's intention to make claims against Ross. Am. Compl. ¶¶ 57, 62.

PCS alleges that the Ross Directors breached their duties to Ross by never informing the Ross Shareholders of either contamination at the Site or Ross's potential liability for that contamination.

---

[1] The amended complaint also contains an equitable indemnification claim, but this claim was voluntarily dismissed by PCS. Entry 90.

Am. Compl. ¶ 60.  PCS also alleges that the Ross Directors breached their duties both to Ross and Ross's creditors by using additional assets that came into their possession to preferentially pay creditors rather than setting aside funds to pay any judgment entered against Ross in *Ashley II*.  Am. Compl. ¶ 59.  PCS further alleges that on January 25, 2008, Ross arranged for a $10,000 payment to Warran & Sinkler, LLP as Escrow Agent for a Steering Committee of Ross Directors, which is directing the defense of Ross in *Ashley II* and related actions.  *Id.*  In addition, PCS alleges that the Steering Committee is using funds from the Ross shareholders to pay legal fees in *Ashley II.  Id.*

PCS alleges that during the discovery for the *Ashley II* litigation in 2006, the Ross Directors denied that they knew anything about the contamination at the Site, or anything about Ross's potential liability before Ross was brought into the *Ashley II* litigation.  Am. Compl. ¶ 64. PCS alleges that the Directors fraudulently concealed information about their knowledge of the Site contamination from PCS in two ways: 1) they testified falsely under oath in depositions, Am. Compl. ¶ 65; and 2) the Directors concealed information from PCS by participating in the Steering Committee and not correcting false testimony, Am. Compl. ¶ 66.  PCS also alleges that the Ross Directors have concealed their awareness of the Site contamination and their awareness of Ross's potential liability in related litigation.  Am. Compl. ¶ 67.

## DISCUSSION

Ross and Scarborough seek a protective order directing that Scarborough will not be required to answer questions involving the work product and privileged communications between Scarborough and the attorneys for Ross.  Entry 69 at 1, 2.  Relatedly, Ross and Hanahan, III seek a protective order directing that Hanahan, III and John H. Warran, III ("Warran"), shall not be required to answer certain questions because such questions involve privileged communications between

Warran and Ross. Entry 97 at 1-2. In addition, PCS seeks an order compelling Ross to provide more detailed privilege logs, or to produce the documents for which PCS has responded in opposition to Ross's privilege claim. PCS contends that Ross "no longer enjoys the benefits of the attorney-client privilege" because Ross is a dissolved corporation. Entry 80 at 10.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 393, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*

The attorney-client privilege applies to corporations as well as to individuals. *Upjohn Co. v. United States*, 449 U.S. 383 (1981). In *Swidler & Berlin v. United States*, the Supreme Court recognized that the attorney-client privilege survives the death of a client when the client is a natural person. 524 U.S. 399, 403-06 (1998). Despite this finding, the application of the attorney-client privilege to a dissolved corporation is unsettled. *See In re Grand Jury Subpoena # 06-1*, 274 F. App'x. 306, 309 (4th Cir. 2008).

In an operating corporation, the attorney-client privilege is controlled by the corporation's current management. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-52 (1985). If the management of a corporation changes, the attorney-client privilege of a corporation passes to new management. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177-78 (S.D. Ohio 1993) (citing *Weintraub*, 471 U.S. at 349). This prevents a former manager from asserting the attorney-client privilege on behalf of a corporation to protect his self-interest, which is not

4

appropriate. *Weintraub*, 471 U.S. at 349 ("managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals"). As observed by the Supreme Court, conducting an inquiry into fraud by former management would be "extremely difficult . . . if the former management were allowed to control the corporation's attorney-client privilege. . . ." *Id.* at 353.

In the wake of *Weintraub*, many courts have addressed the issue of whether dissolved corporations have the right to assert the attorney-client privilege. *See Official Committee of Admin. Claimants v. Moran*, No. 11 C 3300, 2011 WL 3422821, at *2 (N.D. Ill. Aug. 4, 2011) ("Attorney-client privilege survives the death of a client if the client is a natural person, but the weight of authority suggests otherwise if the client is a corporation."); *Official Committee of Administrative Claimants v. Bricker*, No: 1:05 CV 2158, 2011 WL 1770113, at *2 (N.D. Ohio May 9, 2011) (finding that the attorney-client privilege continues to attach to communications of a corporation post-dissolution pursuant to Ohio Revised Code § 2317.021); *Edgewater Med Ctr v. Rogan*, No. 04 C 3579, 2010 WL 2711448, at *5 (N.D. Ill. July 6, 2010) (finding that dissolved corporations do not have the right to assert the attorney-client privilege); *City of Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1199 (C.D. Cal. 2007) (concluding that the special master correctly determined that a dissolved corporation may not assert the attorney-client privilege); *Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006) ("there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause."); *Lewis v. United States*, No. 02-2958 B/AN, 2004 WL 3203121, at *4-5 (W.D. Tenn. Dec. 7, 2004) (concluding that the "attorney-client privilege cannot be applied to a defunct corporation" where the corporation "is

bankrupt and has no assets, liabilities, directors, shareholders, or employees"); *In re JMP Newcor Int'l, Inc.*, 204 B.R. 963, 964, (Bankr. N.D. Ill. 1997) (distinguishing between the attorney-client privilege, which belongs to the client and ceases to exist when the corporate client dissolves, and the work-product doctrine, which "belongs to both the attorney and the client" and continues after the conclusion of litigation); *Travelers of New Jersey v. Weisman*, No. L-16977-06, 2011 WL 519920, *7 (N.J. Super. A.D. Feb. 16, 2011) (finding that there is no time limit on the attorney-client privilege and citing N.J.S.A 2A:84A-20(1), which provides that a dissolved corporation's attorney-client privilege can be claimed by the corporations successors assigns or trustees in dissolution); *Randy Intern. Ltd. v. Auto. Compactor Corp.*, 97 Misc. 2d 977, 980 (N.Y. City Civ. Ct. 1979) (finding that a defunct corporation may still assert the attorney-client privilege). One court has denied a still existing corporation the right to assert the attorney-client privilege when the corporation effectively ceased to operate, had no assets, and had "no activities of any kind." *See Lopes v. Vieira*, 688 F. Supp. 2d 1050, 1068 (E.D. Cal. 2010).

Supreme Court decisions indicate that corporations can exist only under the express law of a state. *Oklahoma Gas Co. v. Oklahoma*, 273 U.S. 257 (1927); *Chicago Title & Trust Co. v. Forty-one Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124-25 (1937); *see also* Michael J. Riordan, *The Attorney-Client Privilege & the "Posthumous" Corporation--Should the Privilege Apply?*, 34 TEX. TECH L. REV. 237, 256 (2003). Therefore, there must be some state statutory authority for the prolongation of a corporation's life beyond dissolution even for litigation purposes. Under South Carolina law, a corporation has "the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power to . . . sue and be sued, complain, and defend in its corporate name." S.C. Code § 33-3-102. Code Section 33-14-

105(c) provides that "[d]issolution of a corporation does not . . . prevent commencement of a proceeding by or against the corporation in its corporate name. . . ." *Id.* The official comment to Section 33-14-105 states that it: "expressly reverses all . . . common law attributes of dissolution and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that suits by or against the corporation are not affected in any way." *Id.*

Since South Carolina law permits a dissolved corporation to be sued, the court finds that it follows that a dissolved corporation could assert the attorney-client privilege where former directors or others properly exercise authority to do so. *See* S.C. Code §§ 33-8-101, 33-14-105(c); *see also Gilliland*, 2006 WL 2642525, at *4; *Lewis*, 2004 WL 3203121, at *4-5. This finding is based upon the following. First, corporations are subject to litigation after dissolution in South Carolina, and official statutory commentary indicates that corporations have the same rights regarding litigation that they had before dissolution. *See* S.C. Code § 33-14-105(c). Second, failing to recognize an attorney-client privilege would be a significant exception to the rule, and could chill corporate-attorney communications. Third, encouraging full and honest communications between corporations and attorneys should remain paramount because such communications promote legal compliance. Fourth, while the Supreme Court has found that the corporate attorney-client privilege can change hands, it has never completely denied the privilege to dissolved corporations. Despite having potentially infinite life, most corporations are likely to dissolve at some point, making the complete denial of the privilege much more consequential than the passage of the privilege to new management.

Despite the court's finding that the attorney-client privilege of a dissolved corporation can

be asserted under certain circumstances, the court finds that, under the circumstances of this case, the Ross Directors' assertion of the privilege with regard to Warran's advice to Ross after September 2005 is inappropriate. As the parties asserting the attorney-client privilege, Defendants have the burden of proving that the privilege applies. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Defendants have not met this burden. The Supreme Court has stated that it is impermissible for corporate decision makers to assert the attorney-client privilege to protect their own interests instead of those of the corporation. *Weintraub*, 471 U.S. at 349, 353. The allegations of PCS in this case are that the only interests that would be protected by the assertion of the privilege for communications related to Ross's dissolution are those of the Ross Directors. Ross has not set forth any other reason for raising the privilege. Specifically, Ross, as a dissolved corporation, has not asserted any interest in maintaining goodwill, protecting its reputation or protecting any available assets. *See Gilliland*, 2006 WL 2642525, at *4; *City of Rialto*, 492 F. Supp. 2d at 1200. On the facts of this case, the court finds that the assertion of Ross's attorney-client privilege with regard to legal advice provided to Ross by Warran after September 2005 appears to be an attempt to protect the personal interests of the Ross Directors. This would be an impermissible purpose. Therefore, Ross's motions for protective orders are denied.

With regard to PCS's motion to compel Defendants to produce more detailed privilege logs or for the production of documents withheld, the court finds the motion to compel is granted. Without a more detailed privilege log, it is impossible to determine whether the attorney-client privilege is being properly asserted. Defendants must review their privilege logs and produce privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5)(A); *see also N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501-02 (4th Cir. 2011). For each individual communication,

Defendants must provide: 1) all authors; 2) all recipients; 3) the client involved; 4) all those known to have received the document; 5) a description sufficient to show that the document involved legal advice; and 6) a reason why the assertion of the privilege will protect Ross's interests as opposed to those of the Ross Directors. *See Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C 07-1359, 2008 WL 4547190, *1 (N.D. Cal. Oct. 10, 2008). Any documents proposed to be withheld by asserting the attorney-client privilege solely to protect the interests of the Ross Directors would be improper.

<u>**CONCLUSION**</u>

Based upon the foregoing: 1) Ross and Scarborough's Motion for Protective Order (Entry 69) is denied; 2) Ross and Hanahan, III's Motion for Protective Order (Entry 97) is denied; and 3) PCS's Motion to Compel the Production of Documents from Ross (Entry 95) is granted.

**IT IS SO ORDERED**

<u>s/ Margaret B. Seymour</u>
Margaret B. Seymour
United States District Judge

Columbia, South Carolina
August 19, 2011

9